The first case to be heard will be Gene C. Oliver v. New York State Police et al. And Oliver is pro se, and will have an opportunity now to speak. Yes, thank you, your honors. It's a privilege to be able to present this case to you. I believe this case is very straightforward, and I pray that this court will grant me the hearing I am requesting to litigate evidence which the defendant failed to disclose, and which therefore denied me the ability to fully and fairly litigate these issues, which were not available to me at the time of my Article 78 proceedings. Referencing pages 27 through 28 of my brief, under legal argument, the doctrine of collateral estoppel prevents a plaintiff from re-litigating in a subsequent proceeding an issue of fact or law that was fully and fairly litigated in a prior proceeding. Collateral estoppel, however, is permitted only if the identical issue was raised in a previous proceeding, the issue was actually litigated and decided in the previous proceeding, the party had a full and fair opportunity to litigate the issue, and the resolution of the issue was necessary to support a valid and final judgment on the merits. Under New York law, among the relevant factors to consider in deciding whether a party had a full and fair opportunity to litigate in a prior proceeding for purposes of applying the doctrine of issue preclusion are the size of the claim in the prior proceeding, the form of the prior proceeding, the extent of the prior litigation, and the availability of the evidence now that was not available at the time of the prior proceeding. It wasn't until I was able to depose the former superintendent more than one year after my Article 78 petition was dismissed that Joseph D'Amico admitted under sworn deposition that he did not conduct an independent appraisal of the administrative charges and specifications against me, and he also did not review the transcript taken from the administrative hearing held against me as falsely reported on the legal instrument he signed, which authorized my termination from the New York State Police based on legal duties Mr. D'Amico knowingly and willingly failed to perform. I would ask that the court review page 137 of Volume 1 of my appendix, in which Joseph D'Amico states, I, Joseph A. D'Amico, Superintendent of the New York State Police, having made an independent appraisal of the amended charges and specifications dated May 28, 2015, and having reviewed the findings and recommendations of the hearing board submitted after a hearing held on June 30 and July 1, 2015, and the transcript of such hearing being made available to me, do hereby make the following determination. The findings and recommendations of the hearing board are accepted. Investigator Gene C. Oliver is found guilty of all charges. Investigator Gene C. Oliver is hereby dismissed from the Division of State Police effective immediately. The legal requirements of the Superintendent of the New York State Police to perform these duties are taken from codes, rules, and regulations of the State of New York, Title IX, Executive Department, Subtitle K, New York State Police Part 479, and are written in the New York State Police Manual, Rule 3, and the New York State Police Disciplinary Hearing Officers Legal Manual. However, under sworn deposition, Joseph D'Amico testified he had no knowledge of Part 479. He had no knowledge of the New York State Police Manual, Rule 3, and he had no knowledge of the New York State Police Disciplinary Hearing Officers Legal Manual, and in fact endorsed the legal instrument authorizing my illegal and wrongful termination from the New York State Police based solely on the hearing board's findings and recommendations, which depositions also revealed was not at all an independent decision of the hearing board, but was in fact a document produced by Division Counsel's Office, only to be falsely filed in opposition to my Article 78 petition as the independent findings and recommendations of this hearing board. Under New York State Police Manual, Rule 3, at the conclusion of the hearing, finding and recommendations of the hearing board shall be submitted to the superintendent for his final determination, and the accused member may request to have the final decision of the superintendent rendered without the transcript of the testimony. Such request shall be in writing, and it shall be restricted to a waiver of the requirement that the transcript of testimony be available to the superintendent before his final decision. I did not waive that requirement, that the superintendent render his decision without reviewing the transcript of the testimony in this case, because the transcript provided evidence which was crucial to my defense. It not only provided direct evidence of the false testimony Stephen Negrelli provided against me, as it related to the accusation that I disobeyed him, related to the CNET-related, narcotics-related operational duties, I was regularly assigned as a member of Troop ACTIU. It also provided direct evidence that the findings and recommendations of the hearing board were never written by the hearing board. They were, in fact, written by division counsel, to include a direct quotation which appears within these findings and recommendations as reportedly taken from an experienced narcotics supervisor, which in reality was a direct quotation taken from former division counsel member Lois Goland. The contradictions to the administrative charges would have been immediately revealed if the former superintendent conducted an independent appraisal and reviewed the transcript as he was legally required to do. I presented the court with sworn testimony from Stephen Negrelli, and in his sworn testimony, which came from the transcript, he testified, coming from CNET lifestyle and working in counterterrorism, I know it's a different position, because in CNET there is a saying, you are the tip of the spear because you are out there in the street doing the job. It's not what we do in counterterrorism. It's an intelligence world. And Investigator Oliver, from her military responsibilities, knows that. It's behind the scenes. We are not operational. We gather information and we pass it along. I took that from page 400 of my appendix. Yet, your honors, if you look at the page... If you look at the duties that I submitted, Judge, I was assigned these same CNET-related, narcotics-related duties from Stephen Negrelli. In addition, Judge, that inside the transcript, if the superintendent had read it, he would have known that this could not possibly be true. Richard Allen, when I confronted him, I also deposed him, your honors. He was a hearing board officer. And when I confronted him with the false statement that appears in the hearing board's findings and recommendations, he acknowledged that he never wrote this document. He said he read the findings and he concurred with it. They were written by division counsel. It didn't even come from the hearing board members. And I couldn't present this until after I found out the evidence. I immediately filed a motion. I presented it to the district court. And the district court said that that issue preclusion prevented me from re-litigating this. This was evidence that was never disclosed to me. It didn't come to light until I deposed these defendants. And I am respectfully requesting that this court allow me a hearing to present this evidence which was never disclosed and which would have required the granting of my Article 78 petition. Thank you, Ms. Holliver. You've reserved two minutes. And so we'll turn to counsel for the atelier. First, Mr. Daniel Moore. Thank you, your honor. My name is Dan Moore and I represent all of the ateliers with the exception of Lieutenant Martin McKee. May it please the court. This appeal involves an area of the law that is very well settled. And for that reason, I rely primarily on our brief. But I would like to make, however, a couple of points for the court's consideration. First, to be successful on this appeal, Ms. Holliver needs to demonstrate that the district court abused its discretion in denying her motion for a preliminary injunction. But she cannot do that here because the district court's decision is grounded on a well-established legal precedent issued by this court. That precedent provides that to obtain a preliminary injunction, the moving party, or Ms. Holliver here, must show at a minimum that the harm to be suffered in the absence of an injunction is so imminent and so irreparable that it will impede the court's ability to grant an effective remedy if the court were to wait until the conclusion of the trial to resolve the harm. Here, though, the alleged harm is Ms. Holliver's discharge from employment back in 2015. And Ms. Holliver is ultimately asking this court to force the New York State police to reinstate her as a New York State police investigator some five years after she has been absent from service. Over and over again, the courts in this circuit have held that a discharge from employment does not constitute irreparable harm, even where the discharge is close in time with the application. In fact, the few courts granting such relief have been reversed by this court. Moreover, Ms. Holliver has put forward no evidence that demonstrates that she has suffered any irreparable harm of any kind. She has instead focused her briefs on her continuing perception that her termination was unfair, and she justifies her exceedingly late-in-time application because she believes that she discovered at deposition that the New York State police superintendent failed to properly follow regulations regarding his review of the transcript of testimony from her disciplinary hearing before he issued his decision. Respondent contends, however, that Ms. Holliver misunderstands this regulation, but this really makes no difference. The New York State courts have already ruled that the decision to terminate Ms. Holliver after a full evidentiary hearing was supported by substantial evidence, but she just cannot accept this fact. Rather, she's fixated by her belief that the appellate division erred. Rather than addressing the district court's reasoning, which cites extensive precedent confirming the utter lack of any basis for injunctive relief where a litigant seeks reinstatement following termination, Ms. Holliver reproduces the same arguments and allegations relating to her conduct, which have been repeatedly made and rejected at her hearing and in the many state court proceedings that have followed. In short, Ms. Holliver, by ignoring the issue of imminent and irreparable harm, has simply missed the boat. Finally, and in any event, this appeal has been made moot by the decision of the district court in April of this year, docket number 322. In that decision, the district court granted in part and denied in part defendants' motions for summary judgment and held that Ms. Holliver was precluded from relitigating the factual findings of the hearing board that were confirmed by the New York State Appellate Division and which resulted in Ms. Holliver's termination. Hence, her termination claim is no longer even in this case. Thank you, Your Honors. Thank you, Mr. Moore. Ms. Jocelyn. Thank you, Your Honor. My name is Lisa Jocelyn, and I am here on behalf of Appellee Martin McKee. I will do my best not to repeat any of Mr. Moore's arguments for the sake of convenience. However, I would like to reiterate a few points. Ms. Holliver was terminated in July of 2015, and the termination came after an extensive investigation by the New York State Police, which resulted in a voluminous report of about 118 pages. After the investigation, she was offered the opportunity to resolve the issues with a 30-day suspension. She elected not to accept that and to head to a full and fair hearing by the State Police Hearing Board. That was her choice, and it was her right, and she took it. She was represented by counsel at the hearing. She had the ability to cross-examine all witnesses and bring forth her own evidence. After the hearing, it was determined that she was responsible and guilty for all charges against her. They included, among other things, disobeying instructions, falsifying official business documents, failing to file paperwork, and declining to document activities that she was not properly participating in. So after the determination, the board recommended her termination, and the superintendent accepted it. Ms. Oliver is working hard to exaggerate what she believes she determined after the deposition of Superintendent D'Amico. However, she is assuming that, and she has to assume, that if Superintendent D'Amico took additional time to review and analyze the transcript of the proceeding, he would have necessarily ruled in her favor, and there's absolutely no evidence of that. When she filed her Article 78 petition, which was, in fact, the proper way to challenge and attempt to vacate the termination, the appellate division found in favor of the New York State police entirely. It was a unanimous decision. It upheld her termination, and her petition was dismissed. You know, for that reason, and in addition to everything found in our brief and that of the New York State police defendant's brief, we believe the district court was wholly proper in denying Plaintiff's application for a preliminary injunction. Thank you. Judge Kabanos? Yes. This is Judge Lillier, with your indulgence. Please. May I ask Mr. Moore one question? You mentioned, Mr. Moore, that this case was moot as a result of developments since the briefing. Could you explain how this case is moot? I'm sorry, Your Honor. Thank you for the question. I believe I said that this appeal has been made moot by the decision because the district court has taken the termination out of the case, that claim out of the case. Isn't there still a claim for retaliatory discharge that's in the case? Your Honor, the way I understand the decision, that is that the termination claim is out of the case at this point, and the judge wrote a 115-page decision, which covered these issues very strongly. I think what was left in the case, the hostile work environment claim, as well as claims arising from some transfers that Ms. Oliver was subject to, but the termination claim, as I read the decision, is now out of the case. That doesn't usually render, I'm sorry, this is Judge Lillier, that doesn't usually by itself render a matter of moot that a district court has dismissed a particular claim. That's why I was surprised by the statement, and I'm trying to understand it before Ms. Oliver speaks. Well, I indicated that it was my belief that it's moot because the termination claim, as the case now stands, is not in the case. If that is true, then the appeal of a preliminary injunction to reinstate the plaintiff would not lie since that claim has been removed. Can I ask before we just move on one question? In terms of the irreparable harm factors, why isn't Oliver's argument about she's being separated from her family based on her military service? Why would that count as a kind of irreparable injury? Well, Your Honor, I don't believe that there's been any case law that has backed that type of injury as something that's irreparable. Assuming the termination claim were in the complaint, the remedy would be to provide whatever money damages were incurred as a consequence of the termination, which may include back pay and other consequential damages. I don't believe I've ever, in reviewing the case law, we find nothing that supports the contention that having to move a location constitutes irreparable harm. And then in terms of the delay in seeking the PI, since one of the factors is likely to success on the merits, I understand you dispute the implications of the deposition, but it would be relevant to whether someone was entitled to a PI and maybe justify a delay in requesting one, that there's new evidence that shows more of an entitlement to success on the merits, wouldn't it? Well, except Your Honor, that as the judge pointed out in the lower court decision, the deposition took place in October of 2018, and it was some four months later before Ms. Oliver made her motion. And according to the court, based on prior precedent, that's too long a period of time. Mr. Moore, this is Judge Cabranes. Let's go back to this question of mootness or what the state of play is here. You suggest that the injunction issue is no longer before us. Is that what you're saying? Well, Judge, I just wanted to point out to the court that the district court has, the way we review the decision is that the district court has concluded that the termination claim is no longer in this case. It's been dismissed. And for that reason. As Judge Laurier suggested, that doesn't mean it's out of the case. It means that it's subject to appeal. Yes, Your Honor. Correct. I'm sorry. All right. Let's assume, I just want to parse this a bit with you. I'm trying to understand your argument. Assuming that we affirm the district court's denial of the injunction, that's the operating assumption. Isn't reinstatement still a potential remedy at the conclusion of this lawsuit? You mentioned the hostile work environment claim. And what else do you say is still with us? There was a claim that the decision to transfer Ms. Oliver from one supervisor to another was retaliatory. There's a claim that Ms. Oliver, her duties were limited and that was retaliatory. And there was a claim that when Ms. Oliver transferred from CTIU, or I'm sorry, CNET to CTIU, that also was retaliated. So if I understand what you're saying, the phrase that you used earlier was that left behind were a hostile work environment claim and three claims of retaliation. Is that right? I believe that's correct, Your Honor. All right. So let's assume that's all that the district court would have after this appeal. Is it not the case that reinstatement is still a potential remedy in the event that Ms. Oliver prevails on either the hostile work environment claim and or one of the retaliation claims? Well, Your Honor, the way I read the court's decision she concluded that the factual findings from the hearing board, which, which concluded that she had Ms. Oliver had engaged in these actions, which constitute the basis for the termination, that she could not undo that termination for that reason. Well, let me, let me put it another way. You're telling us that there's still a hostile work environment, a hostile work environment claim pending in the district court. Is that right? That's correct, Your Honor. And there are three claims of retaliation, correct? Yes, Your Honor. All right. So let's assume for the argument that on remand, the district court proceeds to adjudicate those four different claims. Is it not possible in principle that Ms. Oliver would not adjudicate those four claims? And as a result, the remedy that she could ask for from the court would be reinstatement? Or to put it another way, why, why is such a remedy not available? Well, Your Honor, I believe again that the decision by the judge, relied on the fact that the factual findings had been supported by substantial evidence and confirmed by the appellate division. So again, No, I understand. My premise here was your premise, which is to say that there are four remaining claims which have not been adjudicated as a result of proceedings in the district court. That is your position, is it not? That's, yes, Your Honor. There are these four claims. All right. So I assume for the argument that Ms. Oliver doesn't prevail here on the question of, of, of injunctive release. You're telling us that there are still four surviving claims before the district court. Is that right? Yes, Your Honor. All right. So let's assume for the argument on remand, those four claims come before the district court. What in your view is the appropriate proceeding before the district court on remand? I assume it would be, a decision or review by a trier of fact, right? Yes, Your Honor. All right. So the trier of fact on those four claims, either a jury or the judge could decide in principle in favor of Ms. Oliver, right? Yes, Your Honor. And if, if Ms. Oliver were to prevail on one of those four claims, isn't reinstatement a potential remedy that she could seek? And if not, why not? Well, I, I don't believe so Your Honor with all respect, I think that she would be able to obtain money damages certainly. But reinstatement I believe would be precluded because I think we need to review the law of the case, which is that her termination has been upheld. Okay. Let me ask my colleagues if they have any further questions for Mr. Oslin. Ms. Judge Laurier? Uh, no. Judge Manasci? No, I'm fine. All right. Ms. Oliver has a reserve two minutes. Yes. Thank you, Your Honor. I'll try to be as brief as I can. The reason why the judge dismissed this portion is because she's saying it's, it's precluded that the collateral estoppel presents her from issuing a decision because she said that I, there that I had a, I presented nothing to indicate that I didn't have a full and fair opportunity to litigate the issues surrounding my termination. But I didn't find out that he, that the superintendent never performed his legal duties until I deposed him and Richard Allen, the hearing board member, as soon as I did that. Ms. Oliver, this is, this is certainly, I'm sorry to interrupt, but let me just ask you one question. Um, and you heard some of the back and forth. Uh, what are you looking for? Are you, um, do you really want to be reinstated or, uh, or is there some amount of money, uh, that could compensate you? No, sir. I, they, I didn't do anything wrong and I've been separated from my family for five years. I lived 400 miles from my mom. She's in my home in Buffalo alone and she's dying. She has COPD. She's left the burner on, on the stove. She got her car broke down. It's on a busy highway. I'm extremely sorry to hear this, but, uh, what I'm trying to understand is, uh, is there any amount of money that would compensate you in connection with this? Or are you insisting on a reinstatement back to your old job? Well, sir, I mean, if I could work until I was 60 years old, I was, my coworkers made $185,000 last year. They took all of this away from me and I gave, I didn't do anything wrong. So if they're going to give me, I mean, will they give me my salary that I've missed until I'm 60 years old and a full retirement, my pension, my benefit? Can everything that you've suffered be compensated with, um, with money? I don't know. I don't know because I'm so, I, they've, they've disgraced me and I'm, I'm such a happy person, but I feel like I have a hole in me because I just want to walk back in the door with a smile on my face. And I didn't do anything wrong. And, and your honors, I want to make it clear that the district court only issued her decision because she said it was precluded, but she didn't, she wouldn't let me present the evidence that came to light as a result of the depositions. It wasn't available at the time of my article 78 petition. And if you look at the case involving the Latino police officers association versus the New York city police department in 2003, they were, they, they were not barred from having those issues heard that were not, uh, that were not addressed during their article 78 petitions. I provided a transport on may 29th. Ms. Oliver, I'm sorry to interrupt because we're focused now on the, the denial of the plural injunction for reinstatement and the district court was focused on the fact that you waited four months after, uh, the D'Amico deposition to make your plural injunction motion. Something about, about why, why it took that amount of time to make the motion. Yes. Yes, sir. And if you look at the docket, sir, I immediately appealed to the magistrate judge. I didn't wait at all, your honor. But what happened is the magistrate judge told me you cannot just file this like this. You have to put it in a proper motion to present it to the district court judge, or she won't hear it. I'm not an attorney. And so I spent eight weeks. I paid an attorney $500. I gave him the money and he wouldn't call me back. So after eight weeks, I bought a purse. I bought a subscription to Westlaw and I learned how to do the motion myself. I didn't know how to do it. That's why it took me so long, but I put everything into it. And, and she gave me a hearing. And then when I showed up to the hearing, she wouldn't let me present the argument. She said I was barred because it had already been decided, but it hadn't been, we never talked about these, these issues it's in the transcript. Nobody can deny it, but I was never, I didn't know. Okay. Thank you. Thanks very much. We appreciate your argument. And we ask, we appreciate also the counter arguments will reserve decision in this case. And we'll be deciding it in due course. Thank you very much. Judge. Judge, I had two minutes left. No, this was your two minutes. Oh, sir. Can I just say one more thing? Yeah, sure. Please, sir. Thank you very much. I'd also like this court to know that I asked for a hearing because I was facing a 30 day suspension. I had never been in trouble ever in my career. And so I believed in these processes. And so I never thought that I would be retaliated against for asking for a hearing. If I had known this, I would have never done this, but I really believed in all of these processes. I read the rules and the regulations, and I believe that they would honor that, but they were, they were just retaliating against me so bad. They wanted to send me out as an example, and I'm sorry I ever complained, but all I want to do is go back to work and, and military members can be excused for up to five years and still go back to the state police. So this five years doesn't matter. And quite honestly, I know the manuals better than the supervisors do in the state police. I want to go back to work. Well, thank you, Miss Hollywood. This is a, this is important and we appreciate your argument and decision. And we'll, we have three other cases to hear. So you have to move on. Yes, sir. Thank you. No, thank you.